**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| VIACOM INTERNATIONAL INC., | § | |
| | § | |
| *Plaintiff* | § | |
| | § | C.A. No. 4:16-cv-00257 |
| V. | § | Jury Trial Demanded |
| | § | |
| IJR CAPITAL INVESTMENTS, LLC, | § | |
| | § | |
| *Defendant* | § | |

**DEFENDANT IJR CAPITAL INVESTMENTS, LLC'S**

**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**AND**

**MEMORANDUM SUPPORTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OUT OF TIME**

Respectfully submitted,
s/*Karen B. Tripp*
Karen B. Tripp
Attorney in Charge for Defendant
Texas State Bar No. 03420850
Southern District of Texas No. 2345
4265 San Felipe, Suite 1100
Houston, TX 77027
(713) 658-9323 office phone
(713) 968-9888 office fax

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING…………………………………………………1

ISSUES TO BE RULED ON BY THE COURT………………………………………………1

SUMMARY OF THE ARGUMENT……………………………………………………..2

STATEMENT OF FACTS……………………………………………………………..6

    A.    Statement of Undisputed Material Facts…………………………………6

    B.    Statement of  Disputed Facts……………………………………………...7

ARGUMENT…………………………………………………………………..8

    A.    Plaintiff's Claims Fail Because Defendant Has Not Yet Actually Used THE KRUSTY KRAB Service Mark……...…………………………………..8

    B.    Plaintiff's Claims Fail Because Plaintiff Has Not Used THE KRUSTY KRAB Mark as a Trademark……………………………………………..9

        1.    A "Title" of a Fictional Restaurant in a Cartoon is Not a Trademark…….9

        2.    Plaintiff's Calling Products "Krusty Krab" That Are Replicas of or Otherwise Depict "The Krusty Krab" Fictional Restaurant is a Descriptive, Non-Trademark Use of "Krusty Krab"…………………....13

    C.    Plaintiff's Claims Fail Because Defendant's Use of THE KRUSTY KRAB For its Real Restaurants is Not Likely to be Confused With Plaintiff's Use of "The Krusty Krab" for its Fictional Cartoon Restaurant.................................15

        1.    "Krusty Krab" is Not a Strong Type Mark………………….................16

        2.    Like Words Are Not Enough—Must Consider Overall Effect…...……...16

        3.    Plaintiff's Products Are Different From Defendant's Intended Services………………………………………………………………..17

        4.    Plaintiff's Retail Outlets and Purchasers Are Different From Defendant's Planned Retail Outlets and Purchasers……………………18

        5.    Plaintiff's and Defendant's Advertising Will Have Different Focus…….18

        6.    Defendant Does Not Intend to Capitalize on Plaintiff's Goodwill………19

       7.     There Can Be No Actual Confusion When There Is No Trademark Use……………………………………………………………………20

   D.    Plaintiff's Dilution Claims Fail Because "Krusty Krab" Lacks Requisite Fame…………………………………………………………………...21

   E.    Plaintiff's Unjust Enrichment Claim Is Without Merit And Should Be Dismissed………………………………………………………………...23

   F.    This Is An Exceptional Case Entitling Defendant To Attorney Fees……………24

CONCLUSION……………………………………………………………………25

CERTIFICATE OF SERVICE……………………………………………………………...25

CERTIFICATE OF CONFERENCE……………………………………………………25

EXHIBITS……..…………………………………………………………………...26

Exhibit A      U.S. Patent and Trademark Office Notice of Allowance of Defendant's Trademark Application U.S. Serial No. 86470477 To Register THE KRUSTY KRAB For Restaurant Services

Exhibit B      Trademark Litigation Tactics and Federal Government Services to Protect Trademarks and Prevent Counterfeiting, U.S. Dept. of Commerce, Report to Congress (April 2011)

Exhibit C      Trademark Office Online Brochure Defining Trademarks, Patents, and Copyrights, https://www.uspto.gov/trademarks-getting-started/trademark-basics/trademark-patent-or-copyright

Exhibit D      Manual of Trademark Examining Procedure §§1209, 1209.01, 1209.01(a), 1209.01(b), U.S. Patent and Trademark Office (April 2016)
(relevant portions)

Exhibit E      "What Are Common Specimen Issues?", Tips for Responding to a USPTO Office Action, United States Patent and Trademark Office, https://www.uspto.gov/trademarks-application-process/filing-online/tips-responding-uspto-office-action

Exhibit F      Bubba Gump Shrimp Company, Wikipedia Online Encyclopedia, https://en.wikipedia.org/wiki/Bubba_Gump_Shrimp_Company and screenshots from Bubba Gump Shrimp Co. Restaurant website, www.bubbagump.com.

Exhibit G    Xuan-Thao Nguyen, "Fame Law:  Requiring Proof of National Fame in Trademark Law, 33:1 Cardozo Law Review 89 (2011) (relevant portions)

Exhibit H    Search Results from U.S. Patent and Trademark Office records for trademark applications and registrations for marks containing the word "krab" or "crab"

# TABLE OF AUTHORITIES

## Cases

*1-800 Contacts, Inc. v. Whenu.com, Inc.*,
414 F.3d 400 (2d Cir. 2005)……………………………………………………………8

*7-Eleven Inc. v. Wechsler*, 83 U.S.P.Q.2d 1715 (T.T.A.B. 2007)………….………………22

*Addington v. U.S. Airline Pilots Ass'n*,
606 F.3d 1174, 1179 (9th Cir. 2010)………………………………………………........15

*Amstar Corp. v. Domino's Pizza, Inc.*,
615 F.2d 252 (5th Cir. 1980)........................................................11, 15, 16, 18, 19, 20, 21

*Armstrong Cork Co. v. World Carpets, Inc.*,
597 F.2d 496, 505 (5th Cir. 1979)……………………………………………………16

*Baker v. DeShong*, 821 F.3d 620 (5th Cir. 2016)...................................................2, 25

*Board of Regents v. KST Electric, LTD*,
550 F. Supp. 2d 657 (W.D. Tex. 2008)…………………………………………....10, 21, 22, 23

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672, (9th Cir. 2005)……………………………………………………………9

*Bozé v. Branstetter,* 912 F.2d 801(5th Cir.1990)………….………………………………...1

*Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002)…………………………………15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………………….....1

*Conan Props., Inc. v. Conans Pizza, Inc.*,
752 F.2d 145 (5th Cir. 1985)………………………………………………………17

*Derrick Manufacturing Corp. v. Southwestern Wire Cloth, Inc.*,
 934 F. Supp. 796 (S.D. Tex. 1996)……………………………………………..................1

*DC Comics, Inc. v. Filmation Associates*,
486 F. Supp. 1273 (S.D.N.Y. 1980)………………………………………………12, 13

*DC Comics v. Kryptonite Corp.*,
336 F. Supp. 2d 324 (S.D.N.Y. 2004)……………………………………………...11

*DC Comics, Inc. v. Powers*,
465 F. Supp. 843 (S.D.N.Y. 1978)……………………………………………………11

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,*
925 F. Supp. 2d 1067 (C.D. Cal. 2012)…………………………………………………21

*General Motors Corp. v. Urban Gorilla, LLC,*
No. 2:06-CV-00133 BSJ, 2010 WL 5395065 (D. Utah Dec. 27, 2010)…………………………22

*Illinois High School Association v. GTE Vantage, Inc.,*
99 F.3d 244 (7th Cir. 1996)…………………………………………………………11

*In re Abcor Dev. Corp.,* 588 F.2d 811 (C.C.P.A. 1978)………………………………………14

*Kellogg Co. v. National Biscuit Co.,*
305 U.S. 111 (1938)……………………………………………………………19, 20

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,*
549 F.2d 368 (5th Cir. 1977)…………………………………………………………19

*Lewis v. Continental Bank Corp.,*
494 U.S. 472 (1990)………………………………………………………………….1

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,*
128 F.3d 1111 (7th Cir. 1997)…………………………………………………………20

*Name.Space Inc. v. ICAAN,*
795 F.3d 1125 (9th Cir. 2015)…………………………………………………………9, 15

*Octane Fitness, LLC v. Icon Health and Fitness, Inc.,*
⸺ U.S. ⸺, 134 S. Ct. 1749 (2014)………………………………………………....2, 25

*Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924)……………………………………………11

*TCPIP Holding Co. v. Haar Communications, Inc.,*
244 F.3d 88 (2d Cir. 2001)…………………………………………………..………..22

*Thane Intern., Inc. v. Trek Bicycle Corp.,*
305 F.3d 894, 911 (9th Cir. 2002)……………………………………………………21

*The Steak Umm Co. v. Steak 'Em Up, Inc.,*
868 F. Supp. 2d 415 (E.D. Pa. 2012)……………………………………………………20

*United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90 (1918)……...…………………..…………10

*Warner Bros. v. Gay Toys, Inc.,* 658 F.2d 76 (2d Cir. 1981)……………………………………12

*What-A-Burger v. Whataburger, Inc.,* 357 F.3d 441 (4th Cir. 2004)……………………………20

**Statutes and Rules**

15 U.S.C. §1051………………………………………………………………………………15

15 U.S.C. §1052………………………………………………………………………………15

15 U.S.C. §1052(e)(1)…………………………………………………………………...…14

15 U.S.C. §1063(a)…………………………………………………………………...……4

15 U.S.C. §1114(1)……………………………………………………………………………11

15 U.S.C. §1115(a)……………………………………………………………………..……9

15 U.S.C. §1117(a)……………………………………………………………………2, 25

15 U.S.C. §1125………………………………………………………………………………15

15 U.S.C. §1125(a)……………………………………………………………………………8

15 U.S.C. §1127………………………………………………………………10, 14. 15

17 U.S.C. §102………………………………………………………………………………..15

17 U.S.C. §106………………………………………………………………………………..15

Fed. Rule Civ. P. 56……………………………………………………………………………1

Fed. Rule Civ. P. 56(c)…………………………………………………………………………1

**Other Authorities**

Manual of Trademark Examining Procedure §1209, U.S. Patent & Trademark Office
(April 2016)……………………………………………………………………...14

Manual of Trademark Examining Procedure §1209.01(a), U.S. Patent & Trademark Office
(April 2016)……………………………………………………………………...11

Search Results from U.S. Patent and Trademark Office records for trademark applications and
registrations for marks containing the word "krab" or "crab"………………………………...16

Trademark Litigation Tactics and Federal Government Services to Protect Trademarks
and Prevent Counterfeiting, Report To Congress, U.S. Dept. of Commerce (April 2011)………3

Trademark Office Online Brochure Defining Trademarks, Patents, and Copyrights, https://www.uspto.gov/trademarks-getting-started/trademark-basics/trademark-patent-or-copyright…………………………………………………………………………………10

U.S. Patent and Trademark Office Notice of Allowance of Defendant's Trademark Application U.S. Serial No. 86470477 To Register THE KRUSTY KRAB For Restaurant Services……………………………………………………………………………....2, 6, 8

"What Are Common Specimen Issues?", Tips for Responding to a USPTO Office Action, United States Patent and Trademark Office, https://www.uspto.gov/trademarks-application-process/filing-online/tips-responding-uspto-office-action…………………………………………………………………………….....14, 15

Xuan-Thao Nguyen, "Fame Law:  Requiring Proof of National Fame in Trademark Law, 33:1 Cardozo Law Review 89 (2011) …………………………………………………….......22

## NATURE AND STAGE OF THE PROCEEDING

The deadline for filing dispositive motions has passed. Now pending are Defendant's *Daubert* motion to exclude Plaintiff's expert survey and report and Plaintiff's motion for summary judgment on all counts except one. In addition to opposing Plaintiff's motion, Defendant is moving concurrently for an extension of time to move for summary judgment on the same issues as set forth in Plaintiff's motion and also for summary judgment on the final remaining count in this case.

## ISSUES TO BE RULED ON BY THE COURT

1.    Whether there is a sufficient case or controversy in this case to support this Court's subject matter jurisdiction. Article III of the Constitution permits federal courts to adjudicate only actual cases or controversies. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

2.    Whether Plaintiff is entitled to summary judgment on each of its counts except one relating to unjust enrichment, or whether Defendant is entitled to summary judgment on all counts and consequent dismissal of this case, if this Court allows Defendant to file its summary judgment motion out of time. In deciding a motion for summary judgment, the Court must determine that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. Fed. R. Civ. P. 56; *Derrick Manufacturing Corp. v. Southwestern Wire Cloth, Inc.,* 934 F. Supp. 796 (S.D. Tex. 1996).

3.    Whether Plaintiff's conduct makes for trademark bullying or at least an "exceptional" case warranting an attorney fee award to Defendant under § 1117(a) of the Lanham Act.  The Fifth Circuit construes the meaning of "exceptional" case to be one where:  (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an "unreasonable manner."  *Baker v. DeShong,* 821 F.3d 620 (5th Cir. 2016), citing *Octane Fitness, LLC v. Icon Health and Fitness, Inc.,* —— U.S. ——, 134 S. Ct. 1749, 1756 (2014).  The district court addresses this issue "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *See id.*

## SUMMARY OF ARGUMENT

This lawsuit arises from a single ***lawful*** act by Defendant—an act that the law encourages—the filing of a trademark application with the U.S. Patent and Trademark Office. Like many entrepreneurs, Defendant filed an "intent-to-use" trademark application for a new business.  Defendant sought to register the "word mark" THE KRUSTY KRAB for seafood restaurants he planned to open in California and Texas.   After the Trademark Office ***allowed*** the application and indicated a registration would issue upon Defendant's showing of actual use of the mark [Exh. A], Plaintiff filed this lawsuit.

Before the Trademark Office allowed Defendant's trademark application, Plaintiff could have pursued an economical opposition proceeding at the Trademark Office, challenging the registration under 15 U.S.C. §1063(a) and considering the same basic issues of likelihood of confusion that are before this Court.  Instead, in this inevitably more costly lawsuit, Plaintiff seeks not only an order requiring the Trademark Office to reverse its position and deny Defendant the trademark registration, but also alleges an additional eight counts or claims related

to trademark infringement or dilution, and even including a claim for unjust enrichment.  **Even though Plaintiff admits that Defendant has never actually used the mark, Plaintiff seeks damages, attorneys fees and costs**.

This extensive and aggressive lawsuit by Plaintiff <u>before</u> Defendant's <u>first use</u> of THE KRUSTY KRAB as a trademark has resulted in the issues taking on a speculative and amorphous nature, making the case  awkward and difficult to defend, and bringing into question whether a case or controversy actually exists.  Questions remain as to whether this Court has subject matter jurisdiction and whether Plaintiff has standing to bring these nine counts and to seek damages, attorneys fees and costs.  Defendant respectfully submits that Plaintiff's overall strategy evokes trademark bully behavior.

The United States Patent and Trademark Office ("the Trademark Office") has defined the term "trademark bullying" as the practice of a "trademark owner that uses its trademark rights to harass and intimidate another business beyond what the law might be reasonably interpreted to allow."[Exh. B, Dept. of Commerce Report to Congress (April 2011)]

Indeed, Plaintiff seeks to expand trademark rights beyond boundaries previously established in trademark law.  Plaintiff seeks to establish a property right in three common words used by Plaintiff –"The Krusty Krab."  By bringing this lawsuit before Defendant has even used the words as a trademark, Plaintiff is demonstrating its desire to essentially control language with respect to these three words.

Plaintiff does <u>not </u>itself use those words "The Krusty Krab" in the traditional trademark sense for goods or services competing with those of Defendant.  Plaintiff and Defendant are not competitors.  Rather Plaintiff's evidence shows that Plaintiff uses the three words as the name of a fictional cartoon restaurant that serves as a backdrop in the storyline for a fictional cartoon

character called "SpongeBob SquarePants" ("SpongeBob"). Plaintiff also uses the words, itself or through licensees, to describe and/or decorate promotional and fan items for the cartoon, such as pictures of the fictional restaurant on t-shirts and three-dimensional replicas or images of the fictional restaurant for cake decoration and aquarium decoration and for comprising a LEGO® construction toy of the fictional restaurant for reenacting cartoon scenes in play. Plaintiff or its licensees use the words on other items based on the SpongeBob character and/or cartoon, such as a place name on a "SpongeBob" version of a Monopoly® board and in a video game based on the cartoon.

None of these uses of the words "The Krusty Krab" by Plaintiff or its licensees are actually trademark uses under 15 U.S.C. §1127. Descriptive and decorative uses of a "mark" are not trademark uses. By statutory definition, a trademark use identifies and distinguishes the trademark owner's goods or services from those made or sold by others and indicates the source of those goods or services.

All of the counts at bar however require Plaintiff to *first* establish a <u>trademark</u> in "The Krusty Krab." Plaintiff instead would have this Court simply assume that Plaintiff has a trademark, overlooking that Plaintiff's conclusory allegations do not establish a trademark. Further, all of the counts at bar either require that Plaintiff show a likelihood of confusion of Plaintiff's "trademarked" goods with Defendant's trademarked goods or that Plaintiff show sufficient fame for dilution. Again, Plaintiff's evidence falls short as to both. Plaintiff has failed to establish undisputed facts necessary for an award of summary judgment to Plaintiff on any of the counts.

Since Defendant has not actually used the KRUSTY KRAB trademark in commerce, and Plaintiff has been aware of this lack of use from the beginning, the real focus of the case is

actually on Plaintiff's establishing "property-like" trademark rights in "The Krusty Krab."
Plaintiff's claim to such rights seems to extend from Plaintiff's attempted analogy to older cases
protecting the American icon Superman from what would today be called tarnishment or blurring
forms of dilution. With the law of trademark dilution not then well developed, the courts found
protectable trademark rights in certain well known elements of the Superman storyline. These
cases essentially provided a "property right" or "property-like right" to DC Comics for
Superman and the storyline elements "The Daily Planet" and "Kryptonite" because of what
today in dilution law is called "national fame." However, in keeping with the law at the time, the
courts held the rights to be related to avoiding a likelihood of confusion as to sponsorship or
association with Superman's owner.

However, property type rights in trademarks are highly disfavored and the Trademark
Dilution Revision Act made clear such rights should only be allowed for the most famous—
household word type—trademarks. Plaintiff's SpongeBob cartoon and character may have niche
fame, but they lack the requisite degree of general, widespread, fame for dilution. Thus, Plaintiff
is not entitled to "property-like" rights with respect to SpongeBob or "The Krusty Krab."
Plaintiff should not be allowed to "***bully***" its way into "property-like" rights against Defendant,
under the awkward guise of preventing likelihood of confusion as to sponsorship or association,
without having the fame that would satisfy the law's requirements for success on a dilution
claim; the parties are not competitors and Defendant is not selling goods or services similar to
any that Plaintiff sells and is not using, depicting, or referring to SpongeBob.

Moreover, the question of whether Plaintiff has met the threshold question of "use" of the
trademark by Defendant remains, as such use is believed necessary for this Court to have
jurisdiction under the "case or controversy" requirement of the Constitution.

## STATEMENT OF FACTS

### A.    Statement of Undisputed Material Facts

Plaintiff's repeated statements that "there is no question," does not make it so.  Defendant does not agree that all "facts" represented by Plaintiff as "undisputed" are undisputed. Defendant submits the following statement of undisputed material facts instead.

1.    Defendant filed an application to register the service mark THE KRUSTY KRAB for restaurant services with the Trademark Office, who allowed the application, indicating the registration would issue after Defendant's use of the mark, *before* this lawsuit was filed. [Exh. A—Notice of Allowance of Defendant's Trademark Application]

2.    Defendant's counsel advised Plaintiff's counsel that Defendant had not used the mark THE KRUSTY KRAB, before Plaintiff served Defendant with notice of this lawsuit. [Complaint Exh. B—Def. Response to Pl. Cease & Desist Letter]

3.    Defendant has not yet used the mark THE KRUSTY KRAB in commerce as a trademark, pending the outcome of this lawsuit.  [Def. Answer to Complaint at 9, 2d Affirmative Defense; Pl. App. B ¶9, Exh. 2 (Def. Resp. to Pl Req. for Adm No. 40) and ¶10, Exh. 9 (Dep. of Javier Ramos at 66:11-24, 88:20-91:2)]

4.    Plaintiff does not use the words THE KRUSTY KRAB for restaurant services. [Complaint at ¶¶ 9, 13]

5.    Plaintiff uses the words "The Krusty Krab" and "Krusty Krab" to refer to a fictional restaurant in which a cartoon character called "SpongeBob SquarePants" ("SpongeBob") works according to the storyline in a television cartoon called "Sponge Bob SquarePants" (the "SpongeBob cartoon").  [Complaint at ¶¶ 10, 11]

6.     Plaintiff licenses others to use the words "The Krusty Krab" and/or "Krusty Krab" on so-called "Krusty Krab" products, which bear the likeness of the fictional restaurant either through three-dimensional replicas of the cartoon restaurant or through two-dimensional depictions of the fictional restaurant, usually also with the identifying words "The Krusty Krab" on the picture or on or near the replica.   Pl. App. A to Mot., Sealed Exh. 9 to Spinelli Decl'n, Pl. App. C to Mot., Sealed Exh. 1-3 to Caveza Decl'n.

7.      Plaintiff has never registered "The Krusty Krab" or "Krusty Krab" as a trademark with the US Patent and trademark Office or with the Texas Trademark Office.  *See* Complaint.

8.     When Plaintiff's or its licensees use "The Krusty Krab" or "Krusty Krab" on product packaging, the packaging typically includes reference to "SpongeBob," and there may be a trademark symbol (™ and ®) adjacent "SpongeBob" but not adjacent "The Krusty Krab" or "Krusty Krab." Pl. App. A to Mot., Sealed Exh. 9 to Spinelli Decl'n, Pl. App. C to Mot., Sealed Exh. 1-3 to Caveza Decl'n.

9.     The SpongeBob cartoon aired its first episode about 17 years ago.  Complaint at 2, ¶ 7.

10.    No evidence indicates that Defendant will use depictions or references to "SpongeBob" in the restaurants he plans to call THE KRUSTY KRAB.

**B.     Statement of Disputed Facts**

1.     The number and demographics of persons in Texas and in the United States who have seen the SpongeBob cartoon and who recognize that "The Krusty Krab" is a name given a fictional restaurant in the "SpongeBob" cartoon, particularly if they have not seen the cartoon.

2.     Whether the "SpongeBob" cartoon draws viewers from all ages of the general public, or targets a market niche of children.

3.     Whether likely patrons of Defendant's planned restaurants to be called THE KRUSTY KRAB would associate, affiliate, or connect, the restaurants with Plaintiff, or think that the restaurants were sponsored or endorsed by Plaintiff.

4.     The amount of expenditures for and revenues from the "SpongeBob" character and cartoon that may be fairly attributed to "The Krusty Krab" as a trademark, if any, and to the United States market as opposed to or included with global markets.

## ARGUMENT

### A.     Plaintiff's Claims Fail Because Defendant Has Not Yet Actually Used THE KRUSTY KRAB Service Mark

Plaintiff has summarily stated that for each of its counts for its federal and Texas state false designation of origin and unfair competition claims, and for its Texas state trademark infringement claim, the "standard is the same"—Plaintiff must show only "two elements:  (1) ownership in a legally protectable mark; and (2) infringement of that mark."  Pl. Mot. at 11, and 11 n. 4.  However, this statement assumes within it three distinct elements of such trademark infringement claims--Defendant's "use" of the trademark, "in commerce," and a "likelihood of confusion" of Defendant's services with Plaintiff's products. *See* 15 U.S.C. §1125(a); *I-800 Contacts, Inc. v. Whenu.com, Inc.*, 414 F.3d 400 (2d Cir. 2005).   Moreover, the element of "use" must be decided as a threshold matter because no activity is actionable under the Lanham Act absent the "use" of a trademark.  *Id.*

Defendant's trademark application in issue in this lawsuit is an "intent to use" application.   *See* Exh. A, Notice of Allowance.    Defendant's counsel advised in response to Plaintiff's cease and desist letter, before notice of this lawsuit, that Defendant was not yet using the mark THE KRUSTY KRAB.   Complaint Exh. B—Def. Resp. to Pl. Cease & Desist Ltr. Defendant admitted in response to Request for Admission No. 23 that it had not begun using the

mark.  Pl. App. B ¶ 9, Ex. 2.  Defendant's owner testified in deposition on August 30, 2016 that Defendant had not yet opened a restaurant under the name THE KRUSTY KRAB, and indicated such opening was not imminent.  Pl.'s App. B ¶ 10, Ex. 9 (Ramos Dep. at 66:11-24, 88:20-91:2). Plaintiff acknowledged at least twice in its Motion for Summary Judgment that Defendant has not begun using the mark.  *See* Pl. Mot. at 7, 1.B.2 and at 11 n. 4.

Because Plaintiff has failed to establish Defendant's actual "use" of the mark, Plaintiff's claims fail the threshold issue under the Lanham Act.   Moreover, without this element of "use," there is no case or controversy to be decided by this Court.  Plaintiff's claims are not ripe for adjudication and should be dismissed.  *See Name.Space Inc. v. ICANN*, 795 F.3d 1125 (9th Cir. 2015), citing among others, *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) ("Infringement claims are subject to a commercial use requirement.").

**B.**     **Plaintiff's Claims Fail Because Plaintiff Has Not Used THE KRUSTY KRAB Mark as a Trademark**

Since Plaintiff has not registered "The Krusty Krab" or the "Krusty Krab" as a trademark with the U.S. Patent and Trademark Office, Plaintiff lacks a legal presumption of ownership of the mark.  15 U.S.C. §1115(a).  Plaintiff must establish that it has used and owns the mark as a trademark.  Plaintiff fails to meet this burden.

**1.**     **A "Title" of a Fictional Restaurant in a Cartoon is Not a Trademark**

In its Motion, Plaintiff summarily concludes that it has established trademark rights in the mark "Krusty Krab"[1] "by using it as the title of the fictional fast food restaurant in "SpongeBob." Pl. Mot. at 11, III B.1.a.   A title of a fictional restaurant in a cartoon storyline does not make a

---

[1]     Plaintiff's fictional restaurant is actually shown in Plaintiff's Complaint to be called "The Krusty Krab" rather than "Krusty Krab" and Plaintiff does not discuss the distinction.

trademark, for such title fails to show how it "identifies and distinguishes" real goods or services in commerce or what exactly those real goods or services are. *See* 15 U.S.C. § 1127.

The Lanham Act defines a "trademark" as:

> any word, name, symbol, or device, or any combination thereof—(1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown

and a "service mark" as:

> any word, name, symbol, or device, or any combination thereof—(1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown.

15 U.S.C. §1127. [2]

Plaintiff's explanation refers to recognition of trademark rights in "fictional concepts found in entertainment media" in some cases, begging the question as to whether Plaintiff's position is that its use of two or three common words in entertainment media is enough to give Plaintiff the *exclusive* right to use those words for any and all purposes in commerce. Certainly such a position goes too far. Trademark rights have never been accepted as "rights in gross."[3] *United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 97, (1918) ("There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in

---

[2]     The U.S. Patent and Trademark Office also uses these definitions and has explained that, "the term 'trademark' is often used in a general sense to refer to both trademarks and service marks. Exh. C. https://www.uspto.gov/trademarks-getting-started/trademark-basics/trademark-patent-or-copyright.

[3]     Dilution law has now evolved to coming close to allowing "rights in gross" in trademarks, but only for a special elite class of trademarks that have attained fame so great and widespread as to make them a "household word." *Board of Regents v. KST Electric, LTD,* 550 F. Supp. 2d 657 (W.D. Tex. 2008).

connection with which the mark is employed . . . its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business."); *also see, e.g., Illinois High School Association v. GTE Vantage, Inc.,* 99 F.3d 244 (7th Cir. 1996) ("What matters is that a trademark is not nearly so secure an entitlement as a property right."), citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (Holmes, J.), 15 U.S.C. §§1114(1), 1125(a).

Plaintiff broadly argues analogy to a few cases; however, each is distinguishable from the case at bar. Two of the cases concerned an American icon, Superman. When the first of the two cases was decided, Superman had been in existence for 40 years. *DC Comics, Inc. v. Powers,* 465 F. Supp. 843 (S.D.N.Y. 1978). In finding in that case that defendants, in "adopting the Daily Planet as the title of their newspaper and in its publication, intended to at least confuse, if not to deceive the public as to the origin of the publication," the court noted that, "there were, throughout the brief history of [defendants'] Daily Planet, numerous references in the paper not only to the Superman character, but also to the Superman story." *Id.*

When the second of these cases was decided, Superman had been in existence for nearly 70 years. *DC Comics v. Kryptonite Corp.,* 336 F. Supp. 2d 324, 332 (S.D.N.Y. 2004). That case concerned breach of a license agreement and related trademark infringement of "Kryptonite," which is the strongest of marks, having been originally made up and defined by DC Comics for the Superman radio show.[4] The court found that DC Comics owned a valid trademark in

---

[4]     Made-up marks are called "fanciful" and are the strongest marks, entitled to the greatest protection as trademarks, because they have the greatest ability to be distinctive and to uniquely identify associated goods or services. *See, e.g., Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252 (5th Cir. 1980), reh'g and reh'g *en banc* denied, *also see* Exh. D, Manual of Trademark Examining Procedure (TMEP) §1209.01(a), U.S. Patent and Trademark Office (April 2016).

Kryptonite, which had been "closely associated with Superman resulting from DC Comics' 60 years of use of Kryptonite *with* Superman."

Plaintiff's comparison of SpongeBob to Superman and "Krusty Krab" to Kryptonite seems misplaced and akin to comparing apples to oranges. Plaintiff's "SpongeBob" character and cartoon, in existence but 17 years, have not reached and may never reach "American icon" status. Moreover, there is no evidence that Defendant's restaurants will make any reference to SpongeBob or call SpongeBob to mind by decoration or design. Further, "The Krusty Krab" is not as strong a mark as "Kryptonite" or "The Daily Planet." Rather, "The Krusty Krab" is highly suggestive of a seafood restaurant and thus is entitled to less protection as a mark.[5]

Plaintiff's attempted analogy to the facts in *Warner Bros. v. Gay Toys, Inc.,* 658 F.2d 76 (2d Cir. 1981), also fails. The court in that case found that Warner Bros. had met its burden of proof of the likelihood of confusion as to the sponsorship of a toy reproduction of an automobile prominently featured on "The Dukes of Hazzard," a successful Warner Bros. T.V. series. In contrast, Defendant in the case at bar has <u>not</u> copied Plaintiff's cartoon restaurant called "The Krusty Krab." Defendant has no plans for its restaurants to look like the fictional restaurant or to serve food like the fictional restaurant and Plaintiff has presented no evidence of any such plans.

Plaintiff also cited *DC Comics, Inc. v. Filmation Associates,* 486 F. Supp. 1273 (S.D.N.Y. 1980), concerning <u>competing</u> cartoons with similarities, and thus also non-analogous to the case at bar. The court in *Filmation* remarked that in the Second Circuit, "where the

---

[5] Plaintiff's argument that the "Krusty Krab" as a mark would not suggest or describe "television and entertainment services, motion pictures, theatrical productions, or consumer products" and thus is an "arbitrary mark" and "inherently distinctive" does not show use of the "Krusty Krab" as indicating the <u>source</u> of such media for the sale of such media. Plaintiff has not shown use of the "Krusty Krab" as a trademark and so qualities such as being "arbitrary" or "inherently distinctive" don't apply. Pl. Mot. at 13-14, § III.B.1.b.

product sold by plaintiff is 'entertainment' in one form or another, then not only the advertising of the product but also an ingredient of the product itself can amount to a trademark protectable under § 43(a) because the ingredient can come to symbolize the plaintiff or its product in the public mind." The court advised that: "Protectable 'ingredients' include the names and nicknames of entertainment characters, as well as their physical appearances and costumes, but not their physical abilities or personality traits." *Id*. The court considered such "ingredients" in weighing likelihood of confusion between the competing cartoons.

At bar, since the fictional restaurant called "The Krusty Krab" is not itself a "character" in the SpongeBob cartoon, but rather is a backdrop in the storyline, Plaintiff has not shown that "The Krusty Krab" fictional restaurant is an "ingredient" of the SpongeBob cartoon or that it symbolizes Plaintiff "in the public mind." *See* Complaint at ¶ 10.

The cases cited by Plaintiff were all decided before Congress enacted the Trademark Dilution Revision Act of 2006 (TDRA), narrowing and more specifically defining when dilution of a trademark could be found when the trademark owner and the accused trademark infringer did not have similar or competing products. Plaintiff's failed analogies assume a higher degree of fame or recognition than Plaintiff has established for the "Krusty Krab."

2. **Plaintiff's Calling Products "Krusty Krab" That Are Replicas of or Otherwise Depict "The Krusty Krab" Fictional Restaurant is a Descriptive, Non-Trademark Use of "Krusty Krab"**

Plaintiff further summarily concludes that it has established trademark rights in the mark "Krusty Krab" by "selling a myriad of "Krusty Krab" consumer products through licensees." Pl. Mot. at 11, III B.1.a. However, review of Plaintiff's evidence shows such "Krusty Krab" products to be either three-dimensional replicas or facsimile objects of the fictional "The Krusty Krab" restaurant in the SpongeBob cartoon, or pictures or depictions or similar two dimensional

portrayals of that fictional restaurant adorning or decorating items such as t-shirts or a "place name" on a game board.  Pl. App. A to Mot., Sealed Exh. 9 to Spinelli Decl'n, Pl. App. C to Mot., Sealed Exh. 1-3 to Caveza Decl'n.  Thus, Plaintiff's use of the "Krusty Krab" is a descriptive and/or ornamental or decorative use, but not a trademark use.  Plaintiff's use of "Krusty Krab" identifies the product, <u>not the source</u> of the product as required by 15 U.S.C. §1127.

The Trademark Office, in accord with the requirements of 15 U.S.C. §1052(e)(1), denies registration on the Principal Register (and thus denies exclusivity) to "[m]atter that 'merely describes' the goods or services on or in connection with which it is used."  Exh. D., Trademark Manual of Examining Procedure (TMEP) §§ 1209 (April 2016).  "The major reasons for not protecting such marks are:  (1) to prevent the owner of a mark from inhibiting competition in the sale of particular goods; and (2) to maintain freedom of the public to use the language involved, thus avoiding the possibility of harassing infringement suits by the registrant against others who use the mark when advertising or describing their own products."  *Id. citing In re Abcor Dev. Corp.,* 588 F.2d 811, 813 (C.C.P.A. 1978).

And the Trademark Office refuses registration altogether to marks that are not shown to be "functioning as a trademark" to indicate the source of the goods/services associated with the mark.  The Trademark Office has explained that in such cases, consumers encountering the mark would not see it as indicating the source of the goods/services.  "Even though the mark owner might intend the mark to be a trademark, consumers may not perceive it that way."  Instead, the mark "might be informational matter or a commonly used phrase having no source indicating significance, or it might be perceived as mere ornamentation or adornment on the front of a t-shirt or coffee mug."  Another example provided by the Trademark Office that would not show a

trademark use is the "title of a single book or CD." Exh. E, "What Are Common Specimen Issues?", Tips for Responding to a USPTO by the USPTO; *also see* 15 U.S.C. §§1051-1052, 1127.

Plaintiff's licensing of the "Krusty Krab" products seems directed to providing permission under copyright law for the copying of "The Krusty Krab" fictional restaurant image. 17 U.S.C. §§102, 106. Such licensing does <u>not</u> constitute a trademark use of the mark "The Krusty Krab."

**C.** **Plaintiff's Claims Fail Because Defendant's Use of THE KRUSTY KRAB For its Real Restaurants is Not Likely to be Confused with Plaintiff's Use of "The Krusty Krab" for its Fictional Cartoon Restaurant**

All of Plaintiff's claims except its dilution claims require a showing of likelihood of confusion. Only if Defendant's use of the mark THE KRUSTY KRAB is likely to be confused with Plaintiff's use of the mark, can Defendant's use represent a false designation of origin or false description, proscribed by 15 U.S.C. §1125. *Amstar Corp. v. Domino's Pizza Inc.,* 615 F.2d 252 (5th Cir. 1980).

Each of the factors used in the Fifth Circuit for evaluating likelihood of confusion are discussed below,[6] to the extent possible in view of Defendant's lack of use of the trademark, which further demonstrates these issues are not ripe for adjudication.[7]

---

[6] The Fifth Circuit has repeatedly cited the following factors for evaluation in determining whether there is likelihood of confusion: the type of trademark at issue; similarity of design; similarity of product; identity of retail outlets and purchasers; identity of advertising media utilized; defendant's intent; and actual confusion. *Amstar Corp. v. Domino's Pizza Inc.,* 615 F.2d 252 (5th Cir. 1980).

[7] "A question is fit for decision when it can be decided without considering 'contingent future events that may or may not occur as anticipated, or indeed may not occur at all.'" *Name.Space, Inc. v. ICANN,* 795 F.3d 1125 (9th Cir. 2015); *Addington v. U.S. Airline Pilots Ass'n,* 606 F.3d 1174, 1179 (9th Cir. 2010) (quoting *Cardenas v. Anzai,* 311 F.3d 929, 934 (9th Cir. 2002)).

### 1. "Krusty Krab" is Not a Strong Type Mark

The mark "Krusty Krab" consists of common words, a noun used many times in restaurant names, albeit more often spelled with a "c," instead of a "k," and a common adjective for that noun. See Exh. H showing results of search of Trademark Office records for trademark applications and registrations for marks containing the word "krab" or "crab," indicating nearly 1000 found. Like the mark "Domino" in *Amstar Corp.,* "Krusty Krab" "is not a coined word, is not purely fanciful, and while its application [to media or to a fictional restaurant or to toys or to clothing depicting that fictional restaurant[8]] may be arbitrary, it is still not to be accorded the same degree of protection given such coined and fanciful terms as 'Kodak' or 'Xerox.'" *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F. 2d 252 (5th Cir. 1980), citing *Armstrong Cork Co. v. World Carpets, Inc.,* 597 F.2d 496, 505 (5th Cir. 1979).

### 2. Like Words Are Not Enough—Must Consider Overall Effect

The Fifth Circuit has advised that, "Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." *Amstar Corp.* , quoting Restatement of Torts § 729, comment b (1938). Considering the "total effect" of the "DOMINO" marks in *Amstar,* the Fifth Circuit concluded that there was "little similarity" between the marks DOMINO'S PIZZA and DOMINO'S SUGAR. The marks were "stylistically and typographically distinguishable" and the "commercial impression" was "substantially different." *Id.*

There is no evidence that Defendant's use of THE KRUSTY KRAB for its restaurant services would be "stylistically and typographically *in*distinguishable" from Plaintiff's use. Certainly the commercial effect of a real restaurant is entirely different from any of Plaintiff's

---

[8]     Since Plaintiff does not use "Krusty Krab" as a trademark, it is not certain to what Plaintiff is alleging its "trademark" in "Krusty Krab" applies.

activities.  Since Defendant does not have any restaurants yet, it is not possible to determine the overall commercial impression of Defendant's use of THE KRUSTY KRAB, but Plaintiff bears the burden of proof.

**3.**     **Plaintiff's Products Are Different From Defendant's Intended Services**

Since Plaintiff does not actually use "Krusty Krab" as a trademark for any product or service, it is not certain with what products to compare, but none of Plaintiff's products (or services, if any) are similar to Defendant's restaurant services—not media, not toys or games, not t-shirts or stickers, not fictional restaurant food. Pl. Mot. at 17, III.B.2.c.  Plaintiff's argument that the goods and services offered at a fictional restaurant are "identical in the minds of consumers" as those offered at a real restaurant lacks credibility.  People know what they eat. They cannot taste or be sustained by imaginary food.

Defendant's argument that "it would be natural for Viacom to also offer restaurant services" is speculation or conjecture at best and has no support in the evidence.  Plaintiff has cited no known restaurants in the United States based on a cartoon theme.  Paramount Pictures Corp.'s license to Bubba Gump Shrimp Co. for a seafood restaurant based on a fictional concept in the 1994 movie *Forrest Gump* is not analogous.  The Bubba Gump Shrimp Co. restaurant includes in the restaurant name the name of the key movie character –"Gump"--and the restaurant has a theme based on the movie.  *See* Exh. F, Bubba Gump Shrimp Company, Wikipedia Online Encyclopedia, https://en.wikipedia.org/wiki/Bubba_Gump_Shrimp_Company and screenshots from Bubba Gump Shrimp Co. Restaurant website, www.bubbagump.com. The restaurant in *Conan Props., Inc. v. Conans Pizza, Inc.,* 752 F.2d 145 (5th Cir. 1985), cited by Plaintiff, was also theme-based on the fictional hero Conan of the same name.  *Id.*  There is no evidence that Defendant's restaurants will have a SpongeBob theme or that Defendant will refer

to SpongeBob in Defendant's restaurants.

### 4. Plaintiff's Retail Outlets and Purchasers Are Different From Defendant's Planned Retail Outlets and Purchasers

Dissimilarities between retail outlets for and the predominant consumers of plaintiff's goods and defendant's services lessen the possibility of confusion, mistake, or deception. *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F. 2d 252 (5th Cir. 1980). There is no overlap between the locations that Plaintiff's products are sold and the likely location of Defendant's restaurants, and Plaintiff was silent on this factor.

However, in a press release or other marketing piece, Plaintiff characterized SpongeBob as being or having been a "Saturday morning kids' show" and as being or as becoming "a pop culture maverick." Pl. App. B to Mot., Ex 1 to Decl'n of Rausa, VIAC 01237 at 2d¶ (unsealed).[9] There is no evidence that Defendant will even have televisions in its restaurants, and there is no evidence that Plaintiff has products that would typically be considered part of restaurant services.

While Defendant's owner testified that its restaurants would be open to all, including families, Defendant's owner also testified that his restaurants would offer alcoholic beverages and thus would not be targeting children. Pl. App. B, Sealed Exh. 9, Ramos Depo., at 136. There are believed to be substantial dissimilarities between the predominant purchasers of Plaintiff's products and defendant's planned services.

### 5. Plaintiff's and Defendant's Advertising Will Have Different Focus

The evidence concerning Plaintiff's advertising media and Defendant's advertising media lacks sufficient detail for significant conclusions, and with respect to Defendant is speculative. Both parties indicated they would advertise in the typical ways of the day—online. Since

---

[9] Additional information is under seal at Pl. App. A, Sealed Spinelli Decl'n, at 3, ¶9 & Exh. 2 thereto.

Plaintiff's cartoon in issue is a television series, Plaintiff naturally advertises on television. Defendant indicated in his deposition that he would eventually advertise in a number of ways, including television. However, considering the breadth of online and television advertising, without more, it is not possible to know what if any extent the audience or intended target of the parties' advertising will overlap. Plaintiff bears the burden of proof on this issue and has failed to provide sufficient evidence for a determination to be made with certainty. However, given the evidence concerning the difference in targeted customers discussed above, it is likely that the specific advertising media (i.e., channels) used would be different as well.

6.    **Defendant Does Not Intend to Capitalize on Plaintiff's Goodwill**

Although courts have stated that a trademark infringer's intent of deriving benefit from a trademark owner's reputation might be sufficient "to justify the inference that there is confusing similarity," the Fifth Circuit has clarified that, "Bad faith in the adoption and use of a trademark normally involves the imitation of packaging material, use of identical code numbers, adopting of similar distribution methods or other efforts by a party to 'pass off' its product as that of another." *Amstar Corp.,* citing *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 382-83 (5th Cir. 1977).

There is no evidence that Defendant intends to "pass off" its restaurants as having any association with Plaintiff. Plaintiff's counsel in zealous advocacy has argued excerpts from Defendant's owner's deposition in an attempt to show that Defendant selected the mark THE KRUSTY KRAB with capitalizing on Plaintiff's goodwill in mind. Pl. Mot. at 18, III.D.2.e. However, when one reads more of the transcript of the deposition of that owner, Javier Ramos, and also reads the deposition transcript of his friend Ivan Murillo who helped select the name, the evidence is corroborated that Plaintiff did not select the mark with Plaintiff or SpongeBob in

mind.[10] Pl. App. B, Sealed Exh. 9, Ramos Depo., at 47-48 (which may be unsealed per Defendant) and Pl. App. B, Sealed Exh. 15, Murillo Depo, at 22-23 (which may be unsealed per Defendant).

**7.      There Can Be No Actual Confusion When There Is No Trademark Use**

After acknowledging that Defendant has not used the mark THE KRUSTY KRAB, Plaintiff relies on survey evidence ("the Blair Report") to speculatively argue that actual confusion "will occur." The Blair Report and survey are so highly tendentious, prejudicial, and flawed, and consequently unreliable, as discussed in Defendant's Daubert motion to exclude it, that both the report and the survey should be ruled inadmissible.

Further, Plaintiff has failed to provide a proper foundation for showing that the survey can properly predict "actual confusion." Surveys may be evidence of actual confusion if they replicate the real world setting in which a consumer would encounter the mark. Plaintiff's survey did not. *The Steak Umm Co. v. Steak 'Em Up, Inc.,* 868 F. Supp. 2d 415, 424 & n.5 (E.D. Pa. 2012); *also see What-A-Burger v. Whataburger, Inc.,* 357 F.3d 441 (4th Cir. 2004)("An informed analysis of whether the likelihood of confusion exists cannot rest solely upon a 'side-by-side' comparison of the marks without regard to the marketplace in which they are used."), *citing Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1115 (7th Cir. 1997).

---

[10]      Moreover, the United States Supreme Court has long acknowledged the limits to the scope of protection that should be afforded trademark rights, recognizing a right to share in another's goodwill when there is no evidence of passing off or deception. *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111 (1938)("Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a rights possessed by all and in the free exercise of which the consuming public is deeply interested."). Legal commentators have noted that a tension exists between the right to protect trademark rights and the conflicting right to share in another's goodwill when there is no deception. Trademark rights should not expand into a right in gross, for that limits the choices available in the market while failing to further the interest of the public in avoiding confusion.

The Blair Report also is unreliable as evidence of likelihood of confusion, and should be excluded, again for the reasons stated in Defendant's Daubert motion to exclude it. Recognition by some persons that "The Krusty Krab" is the name of a fictional restaurant in the SpongeBob cartoon does not mean that such persons would likely think Defendant's restaurants are owned or sponsored or affiliated with or connected to or otherwise associated with that cartoon or the cartoon's owner. Plaintiff's contention to the contrary is unjustified. *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F. 2d 252 (5th Cir. 1980) (word-association bears little weight with respect to likelihood of confusion.). Also see *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,* 925 F. Supp. 2d 1067, 1074 (C.D. Cal. 2012) (noting where the words comprised the exact name of the character, it would be "extremely unlikely that a prospective consumer would understand those words as identifying the source of the goods rather than merely naming the character"). *Id.*

**D. Plaintiff's Dilution Claims Fail Because "Krusty Krab" Lacks Requisite Fame**

Dilution is a cause of action "invented and reserved only for marks having such powerful consumer associations that even non-competing uses can impinge on their value." *Board of Regents v. KST Electric, LTD.,* 550 F. Supp. 2d 657 (W.D. Tex. 2008). "Dilution causes of actions tread very close to granting 'rights in gross' in a trademark and consequently require that the mark have achieved broad-based fame wherein a large portion of the general consuming public recognizes the mark. That is, the mark must be a "household name." *Id.* citing *Thane Intern., Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 911(9th Cir. 2002).

Plaintiff argues dilution of a mark that Plaintiff has not even registered. *See* Complaint. The court in *Board of Regents* noted that "one could logically infer lack of fame from a lack of registration ...." *Board of Regents v. KST Electric, LTD.,* 550 F. Supp. 2d 657 (W.D. Tex. 2008), quoting 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR

COMPETITION, § 24:106, at 24-293 (4th ed.).  Such inference should be made in the case at bar.

Plaintiff has argued evidence of volume of sales, advertising expenditures, and geographical reach for fame analysis.  Such indirect evidence alone, however, has been rejected by courts as insufficient to establish fame recognition, even before the stricter Trademark Dilution Revision Act (TDRA) was passed making it clear that national fame, not niche fame, was necessary for a finding of dilution.  *TCPIP Holding Co. v. Haar Communications, Inc.,* 244 F.3d 88, 99-100 (2d Cir. 2001)(holding that trademark holder's annual sales of $280 million did not constitute fame).

Survey evidence is needed for establishing fame to the degree necessary to support a dilution claim, but Plaintiff's survey falls short.  *See* Exh. G, Xuan-Thao Nguyen, "Fame Law: Requiring Proof of National Fame in Trademark Law, 33:1 Cardozo Law Review 89, 121 (2011)("courts should impose upon the plaintiff the burden of submitting a consumer survey evidencing the overall, general consuming public recognition of the trademark throughout the United States.").  Even taken on its face, as tendentious as the survey report is, Plaintiff reports no more than 35 percent recognition or association.

For fame adequate for a dilution claim, a recognition level of <u>at least 70 percent</u> is needed, identifying the trademark as a source identifier of <u>only</u> the plaintiff's goods or services. *General Motors Corp. v. Urban Gorilla, LLC,* No. 2:06-CV-00133 BSJ, 2010 WL 5395065, at *5 (D. Utah Dec. 27, 2010) (over 71% recognition by survey participants established fame), affirmed, No. 06-4128 (10th Cir. Sept. 12, 2007); *cf., 7-Eleven Inc. v. Wechsler*, 83 U.S.P.Q.2d 1715, at *14 (T.T.A.B. 2007) (marketing survey (not dilution survey) evidence showing 73% unaided recognition was insufficient to establish adequate fame for establishing likelihood of

confusion and opposition proceeding dismissed); *also see* Exh. G, 33:1 Cardozo Law Review at 94 ("national fame as recognized by at least seventy percent of the U.S. general consuming public must be the requirement for protection under the TDRA.").

Plaintiff's evidence does not show the "Krusty Krab" is nationally famous. Plaintiff even admits that SpongeBob is or has been a "Saturday morning kids' show" and claims that it is or is becoming or has become "a pop culture maverick." Pl. App. B to Mot., Ex 1 to Decl'n of Rausa, VIAC 01237 at 2d¶ (unsealed).[11] Plaintiff also has not established that all the evidence it put forth relating to SpongeBob applies in kind to the "Krusty Krab." Considering that Plaintiff's evidence shows that Plaintiff markets and advertises SpongeBob considerably more than "the Krusty Krab," and never seems to advertise "the Krusty Krab" alone, the amount of Plaintiff's evidence that directly relates to "the Krusty Krab" is uncertain.[12]

The "TDRA is simply not intended to protect trademarks whose fame is at all in doubt." *Board of Regents v. KST Electric, LTD.,* 550 F. Supp. 2d 657 (W.D. Tex. 2008). Because Plaintiff's evidence fails to demonstrate the extremely high level of recognition necessary to show "fame" under the TDRA, and Plaintiff has admitted that the standard is the same under Texas state law, summary judgment should be denied Plaintiff and granted Defendant on all of Plaintiff's dilution claims.

## E.     Plaintiff's Unjust Enrichment Claim Is Without Merit And Should Be Dismissed

Defendant moves for dismissal of Plaintiff's sixth count relating to Texas common law unjust enrichment, which was excluded from Plaintiff's motion. Pl. Mot. 2 at n.1. Like

---

[11]     Additional information is under seal at Pl. App. A, Sealed Spinelli Decl'n, at 3, ¶9 & Exh. 2 thereto.

[12]     Defendant objects to Pl. Sealed Exh. 10 to Mot., article from Time magazine, as hearsay. Also, the article is believed to make reference, inaccurately, to the outcome of this lawsuit, as if the lawsuit were concluded. Thus the article is objected to as prejudicial as well.

Plaintiff's other claims, count six assumes without justification Defendant's use of THE KRUSTY KRAB trademark and seeks restitution for an alleged "free-riding' by Defendant for allegedly "leading" its customers to believe that Defendant's restaurants are affiliated with Plaintff.

Since Defendant has no customers or restaurants, this claim is based on speculation and conjecture and is consequently not ripe for adjudication.  Further, it begs the question as to why such "misled" customers, if any there were, would want to eat at a restaurant owned by Plaintiff, who has provided no evidence of reputation in the restaurant business, just because possibly the customer recognized the restaurant name from SpongeBob.  Since there is no evidence that Defendant's restaurants would have a SpongeBob theme, such patrons would not be visiting a real-life version of the fictional restaurant and in that sense experiencing the cartoon.

## F.    This Is An Exceptional Case Entitling Defendant To Attorneys Fees

Defendant seeks attorney's fees under § 1117(a) of the Lanham Act.   Despite Defendant's only act being a lawful one of filing an "intent-to-use" application to register a trademark, and despite Defendant's advice that it had not used the trademark, Plaintiff brought this lawsuit with numerous counts alleging actual use by Defendant, damages to Plaintiff, and seeking attorneys fees and costs.   All of Plaintiff's claims are speculative and unripe for adjudication.  Nevertheless Defendant has had to defend against the claims and participate in Plaintiff's "fishing expedition" discovery, while Plaintiff itself restricted disclosure of documents under "Attorneys Eyes Only" secrecy to such an extent that Defendant's defense was delayed and more costly than it would have been otherwise.

Plaintiff's behavior against Defendant has been uncommon.  Most trademark owners wanting to object to a third party intent-to-use trademark application pursue an opposition

proceeding before the Trademark Office. If the trademark owner misses the opportunity for such opposition, they typically file a similar cancellation proceeding at the Trademark Office. Aggressive litigation is usually reserved for cases where the trademark owner is either being harmed or faces imminent danger of being harmed. *See* Exh. B, Report to Congress.

Plaintiff's aggressiveness has not been justified, and Plaintiff's bullying allegations have been unreasonable and vexatious, all making this case "exceptional." *See Baker v. DeShong,* 821 F.3d 620 (5th Cir. 2016); *Octane Fitness, LLC v. Icon Health and Fitness, Inc.,* ___ U.S. ___, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014). Defendant requests this Court to exercise its discretion and find Defendant entitled to an award of its attorney fees. *See* 15 U.S.C. §1117(a).

## CONCLUSION

Defendant requests this Court to allow Defendant an extension of time to file a motion for summary judgment on all counts, using the same memorandum in support of that motion as Defendant is using in opposition to Plaintiff's summary judgment motion. Further, Defendant requests this Court to deny Plaintiff's summary judgment motion and to grant Defendant's summary judgment motion and dismiss this case. Defendant also requests this Court to find this an exceptional case and award attorney's fees to Defendant.

October 21, 2016                Respectfully submitted

s/*Karen B. Tripp*
Karen B. Tripp
Attorney in Charge for Defendant
Texas State Bar No. 03420850
Southern District of Texas No. 2345
4265 San Felipe, Suite 1100
Houston, TX 77027
(713) 658-9323 office phone
(713) 968-9888 office fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DEFENDANT IJR CAPITAL INVESTMENTS, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM SUPPORTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OUT OF TIME** along with attached two Proposed ORDERS and EXHIBITS A-H , as well as **DEFENDANT'S COMBINED MOTION FOR AN EXTENSION OF TIME TO FILE A SUMMARY JUDGMENT MOTION AND MOTION FOR SUMMARY JUDGMENT OUT OF TIME,** were served upon all opposing parties, or their counsel of record, by first class mail with a courtesy copy via internet on October 21, 2016.

Tyson David Smith
Pirkey Barber PLLC
600 Congress Ave, Suite 2120
Austin, TX 78701
tsmith@pirkeybarber.com

Stephen P. Meleen
Pirkey Barber LLP
600 Congress, Suite 2120
Austin, TX 78701
smeleen@pirkeybarber.com

_____ s/*Karen B. Tripp*_____
Karen B. Tripp


## CERTIFICATE OF CONFERENCE

I conferred with Tyson David Smith, counsel for Plaintiff, on October 21, 2016, and in that conference I asked his agreement for Defendant's extension of time to file a summary judgment motion on all counts.  He advised that Plaintiff opposes the motion for extension of time.

_____ s/*Karen B. Tripp*_____
Karen B. Tripp

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VIACOM INTERNATIONAL INC., | § | |
| | § | |
| *Plaintiff* | § | |
| | § | C.A. No. 4:16-cv-00257 |
| V. | § | Jury Trial Demanded |
| | § | |
| IJR CAPITAL INVESTMENTS, LLC, | § | |
| | § | |
| *Defendant* | § | |

**EXHIBITS
TO
DEFENDANT IJR CAPITAL INVESTMENTS, LLC'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND
MEMORANDUM SUPPORTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OUT OF TIME**

Undersigned counsel for Defendant represents and declares under penalty of perjury that she prepared all Exhibits hereto and that they are true and correct copies of the documents they purport to be and which they are represented to be by undersigned in the foregoing Memorandum.

s/*Karen B. Tripp*
Karen B. Tripp
Attorney in Charge for Defendant
Texas State Bar No. 03420850
Southern District of Texas No. 2345

Exhibit A      U.S. Patent and Trademark Office Notice of Allowance of Defendant's Trademark Application U.S. Serial No. 86470477 To Register THE KRUSTY KRAB For Restaurant Services

Exhibit B      Trademark Litigation Tactics and Federal Government Services to Protect Trademarks and Prevent Counterfeiting, U.S. Dept. of Commerce, Report to Congress (April 2011)

Exhibit C        Trademark Office Online Brochure Defining Trademarks, Patents, and Copyrights, https://www.uspto.gov/trademarks-getting-started/trademark-basics/trademark-patent-or-copyright

Exhibit D        Manual of Trademark Examining Procedure §§ 1209, 1209.01, 1209.01(a), 1209.01(b) U.S. Patent and Trademark Office (April 2016) (relevant portions)

Exhibit E        "What Are Common Specimen Issues?", Tips for Responding to a USPTO Office Action, United States Patent and Trademark Office; https://www.uspto.gov/trademarks-application-process/filing-online/tips-responding-uspto-office-action

Exhibit F        Bubba Gump Shrimp Company, Wikipedia Online Encyclopedia, https://en.wikipedia.org/wiki/Bubba_Gump_Shrimp_Company and screenshots from Bubba Gump Shrimp Co. Restaurant website, www.bubbagump.com.

Exhibit G        Xuan-Thao Nguyen, "Fame Law:  Requiring Proof of National Fame in Trademark Law, 33:1 Cardozo Law Review 89 (2011) (relevant portions)

Exhibit H        Search Results from U.S. Patent and Trademark Office records for trademark applications and registrations for marks containing the word "krab" or "crab"  (only first 200 of nearly 1000 records found in search shown)