# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| VIACOM INTERNATIONAL INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-257 |
| | § | |
| IJR CAPITAL INVESTMENTS, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## AMENDED MEMORANDUM OPINION & ORDER

On January 11, 2017, the court issued its original memorandum opinion and order that GRANTED Viacom summary judgment on its common law trademark infringement claim and DENIED summary judgment on its dilution claims. Dkt. 32. Viacom moves for clarification of the court's January 11, 2017 order and requests injunctive relief. Dkt. 39. On March 15, 2017, the court held a hearing and GRANTED Viacom's motion for clarification, which is reflected in this amended order in Section III C, and DENIED Viacom's motion for injunctive relief. *Id.* After considering the parties' arguments, motions, response, reply, and applicable law, the court is of the opinion that Viacom's motion for summary judgment (Dkt. 19) should be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

This is a trademark infringement dispute over the name for IJR's proposed restaurant, "The Krusty Krab," which is the same name and spelling of a fictional restaurant in the animated television series, "SpongeBob SquarePants," that airs on Viacom's Nickelodeon network. Dkts. 19, 26. Since 1999, Viacom has used "The Krusty Krab" in its television show. Dkt. 19 at 4. The restaurant appeared in 166 of 203 aired episodes. *Id.* On December 3, 2014, IJR filed a federal

trademark application for the mark, "THE KRUSTY KRAB," under restaurant services.[1]  Dkt. 19 at 7; Dkt. 21, Ex. 1 at 11–12 (U.S. Trademark Application Serial No. 86470477 (filed Dec. 3, 2014)). On November 23, 2015, Viacom sent IJR a cease and desist letter requesting that IJR change the name of the restaurant, refrain from using any of the SpongeBob marks in connection with the restaurant, and to withdraw the pending trademark application.  Dkt. 1, Ex. 1.  On November 25, 2015, IJR responded to the letter, stating that it "rejects Viacom's claim of likelihood of consumer confusion and respectfully declines to cease use."  Dkt. 1, Ex. 2.

On January 29, 2016, Viacom filed the instant lawsuit with nine claims against IJR under the Lanham Act (15 U.S.C. § 1125 (a),(c)) and state common law.  Dkt. 1.  On September 30, 2016, IJR filed its motion to exclude the plaintiff's expert report and testimony of Dr. Edward Blair.  Dkt. 17. While IJR did not dispute the qualifications of the expert himself, IJR made eleven objections to the expert report, alleging "flawed" reasoning and methodology in reaching the survey results.  Dkt. 17 at 5.  After reviewing the parties' briefs (Dkts. 17, 23), record, evidence, and applicable law, the court held that Viacom has shown by a preponderance of the evidence that the challenged expert report by Dr. Blair is admissible.[2]  Dkt. 31.  Therefore, IJR's motion to exclude the expert report and testimony was DENIED.  Dkt. 17.  Viacom moves for summary judgment on eight of nine claims, which the court will now consider.  Dkt. 19.

---

[1] As of the December 20, 2016 hearing, the trademark application is still pending.  Dkt. 31.

[2] The court is of the opinion that IJR's objections go to the weight of the expert report and the court will consider the survey results accordingly.  The Fifth Circuit has held that "methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility."  *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004); *see also Holiday Inns, Inc. v. Holiday Out In Am.*, 481 F.2d 445, 447 (5th Cir. 1973) (admitting results of the survey and "leaving the format of the questions and the manner of conducting the survey for consideration as to the weight of this evidence").

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the party meets itsburden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Moore v. Willis Ind. Sch. Dist.* , 233 F.3d 871, 874 (5th Cir. 2000).

However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

3

### III. ANALYSIS

Viacom has nine claims against IJR.  Viacom moves for summary judgment on eight of those claims: false designation, unfair competition, and dilution under Texas common law and the Lanham Act; trademark infringement under Texas common law; and refusal of registration under the Lanham Act.  Dkts. 1, 19.

### A.     **Trademark Infringement** (Count 4)

Where a trademark infringement action is brought under Texas common law (as in the case here), courts in the Fifth Circuit analyze the claim under the Lanham Act.  15 U.S.C. § 1125;  *see Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010) ("The analysis with respect to [plaintiff's] claims under the Lanham Act will be dispositive of its corresponding claims under Texas law as well.");  *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) ("A determination of a likelihood of confusion under federal law is the same as the determination of a likelihood of confusion under Texas law for a trademark infringement claim.");  *see also Zapata Corp. v. Zapata Trading Intern., Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("The issues in a common law trademark infringement action under Texas law are no different than those under federal trademark law.").

To prevail on a claim of trademark infringement under the Lanham Act, a plaintiff must show: (1) it possesses a valid mark; and (2) defendant's use of its mark creates a likelihood of confusion as to source, affiliation, or sponsorship. 15 U.S.C. § 1051;  *Elvis Presley*, 141 F.3d at 193. It is important to remember that a "mere reproduction of a trademark does not constitute trademark infringement if there is no likelihood of confusion."   4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:28 (4th ed. 2009).  And, "likelihood of confusion" is not

possible confusion, it is probable confusion. *Bd. of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). In this respect, "[c]ontext is especially critical," and a court is required to "consider the marks in the context that a customer perceives them in the marketplace." *House of Vacuums*, 381 F.3d at 485.

Additionally, ownership of a mark is established by use in the market, not by registration. *See Smack Apparel*, 550 F.3d at 475; *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 842 (5th Cir. 1990). Thus, the "senior user" who first uses the mark in the marketplace "is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it." *Union Nat'l Bank*, 909 F.2d at 842–43.

*1. Valid trademark*

To succeed in a trademark claim, the first element that Viacom must demonstrate is that it possesses a valid mark. While a registered mark with the U.S. Patent and Trade Office comes with a presumption of validity, the Fifth Circuit has held that ownership of a trademark is established by use, not by registration. *Id.* at 842; *Amazing Spaces*, 608 F.3d at 237. Although Viacom did not register "The Krusty Krab," it argues that it has a valid mark because it has used "The Krusty Krab" continuously since 1999 when the iconic restaurant was featured in 166 of 203 aired "SpongeBob SquarePants" episodes, including the pilot episode.[3] Dkt. 19 (App. A ¶ 10, Ex. 5). The "Krusty Krab" backdrop is regularly featured in the television show and was also depicted in two SpongeBob SquarePants feature films released in 2004 and 2015, that had total gross receipts of over $470 million. Dkt. 19 (App. A ¶ 11, Ex. 6; App. B ¶ 3, Ex. 2). Examples like these support Viacom's

---

[3] As SpongeBob SquarePants says, "You don't need a license to drive a sandwich." THE SPONGEBOB SQUAREPANTS MOVIE (Paramount Pictures, Nickelodeon Movies 2004).

argument that it has a valid mark based on its use of the mark in commerce.  Further, Viacom has established ownership through its sales and licensing of consumer products.  Dkt. 19 at 13 (citing *Turner v. HMH Pub. Co.*, 380 F.2d 224, 229 (5th Cir. 1967) ("[A] trade or service mark may be acquired through its use by controlled licensees.")).

IJR does not dispute these facts.  Rather, IJR argues that Viacom never registered the mark for "The Krusty Krab,"  and that Viacom cannot have a trademark right in a title of a fictional restaurant.  Dkt. 26 at 7–9, Ex. A (Notice of Allowance for Trademark Application Serial No. 86470477 (filed Dec. 3, 2014)).

The court will consider first whether an element of a television show can be protected and second whether "The Krusty Krab" meets the standards of a distinctive mark.  *Warner Bros. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2d Cir. 1981); *Amazing Spaces*, 608 F.3d 225 at 237.  First, the court agrees with Viacom that trademark protection extends to the "specific ingredients of a successful T.V. series," including symbols, design elements, and characters which the public directly associates with the plaintiff or its product.  Dkt. 19 at 12 (citing *Warner Bros*, 658 F.2d at 78).  Indeed, courts have held that made-up words like "Kryptonite," (a fictional radioactive compound in the Superman series) and the "Daily Planet" (a fictional newspaper where Superman works) have a common law trademark based on use, in part because they have been a "staple of the Superman character and story" and "regularly appeared on licensed consumer merchandise over the years."  Dkt. 19 at 11; *DC Comics v. Kryptonite Corp*., 336 F. Supp. 2d 324, 332 (S.D.N.Y. 2004); *DC Comics v. Powers*, 465 F. Supp. 843, 845, 847 (S.D.N.Y. 1978).  Similarly, Viacom argues that "The Krusty Krab" has been a key element of the "SpongeBob SquarePants" show, citing to its inclusion in over 150 episodes, feature films, a musical, and licensed consumer merchandise.  Dkt. 19 at 12; Dkt. 20, Ex.

5–8 (Spinelli Dec.).  IJR counters that the SpongeBob character is not as well-known as Superman, but fails to include any authority (legal or otherwise) to support its argument that fictional titles are not afforded trademark protection.  Dkt. 26 at 9–12.  Because "The Krusty Krab" is a recurring element of the "SpongeBob SquarePants" show, the court finds that the mark is eligible for trademark protection.

Second, for marks to receive trademark protection, a court must determine whether the symbols or words are inherently distinctive or have acquired distinctiveness through secondary meaning.  *Amazing Spaces*, 608 F.3d at 237.  "If the mark is found to be either generic or descriptive and lacking secondary meaning, a court may cancel it." *Id.* (citing 15 U.S.C. § 1119).

> [A] mark can be distinctive in one of two ways. First, a mark is inherently distinctive if its intrinsic nature serves to identify a particular source . . . . Second, a mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.

*Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 210–11, 120 S. Ct. 1339 (2000).

Viacom argues that it meets both tests for distinctiveness.  First, Viacom argues that "The Krusty Krab" is distinctive because it is "not suggestive or descriptive of products and services offered by Viacom" and is "not intrinsic to television and entertainment services."  Dkt. 19 at 14 (citing *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc.*, 532 U.S. 23, 121 S. Ct. 1255 (2001) (holding a mark's "intrinsic nature serves to identify a particular source of product.")).  But Viacom's arguments are a mere recitation of how courts have defined distinctive marks.  *Id.* at 14–15.

The court, however, is persuaded that Viacom meets the second test for distinctiveness by acquiring secondary meaning.  "This court uses the following seven-factor test to determine whether a mark has acquired secondary meaning: (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the [mark]."  *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 445 (5th Cir. 2015), *cert. denied sub nom. Robin Singh Educ. Servs., Inc. v. Testmasters Educ. Servs., Inc.* (U.S. Nov. 28, 2016); *see also Premier Pools Mgmt. Corp. & Shan Pools v. Premier Pools, Inc.*, No. 05-14-01388-CV, 2016 WL 4258830, at *2 (Tex. App.—Dallas Aug. 12, 2016, pet. filed) ("What is critical of a mark that is not inherently distinctive is that a significant portion of the relevant consuming market has come to identify the name with a particular source—not necessarily the claimant.").

The court finds that Viacom has shown by a preponderance of the evidence that it has met several of the distinctiveness through secondary meaning factors.  Viacom provided ample evidence to support it meets this multi-factored test, including declarations and exhibits that summarize eleven seasons of "SpongeBob SquarePants," and highlighting episodes that reference "The Krusty Krab," its eponymous owner "Mr. Krabs," and its featured menu item, the "Krabby Patty."  Dkt. 20, App. A, Ex. 2.  The record also shows the reach of Viacom and its brands, such as the approximately one billion page views for nick.com accessed via its website and mobile applications (*Id.* at Ex. 3), the $470 million in gross receipts and $197 million in advertising expenses for two "SpongeBob SquarePants" feature films (*Id.* at Ex. 6), and numerous print and Internet advertisements for "The Krusty Krab" licensed consumer merchandise (*Id.* at Ex. 9).  IJR does not dispute that Viacom uses "The Krusty Krab" in its television show.  Dkt. 26.  Instead, it argues conclusory that Viacom has

8

not used the name as a trademark and that the mark does not identify the source of the product.  Dkt. 26 at 9–14.  However, without providing the court direct analysis or specific details, the court finds IJR's arguments unconvincing.  The court finds that Viacom has presented ample evidence to show that "The Krusty Krab" has acquired distinctiveness.

### 2. Likelihood of Confusion

The second step in the trademark infringement analysis is to determine whether there is a likelihood of confusion between the mark and its source, affiliation, or sponsorship. 15 U.S.C. § 1051; *Elvis Presley*, 141 F.3d at 193. The court considers the following factors when determining the likelihood of confusion: "(1) the strength of the plaintiff's mark; (2) the similarity of design between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the similarity of advertising media used; (6) defendant's intent; (7) evidence of actual confusion; and (8) the degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).  "No factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley*, 141 F.3d at 194.

On balance, the court finds that Viacom has presented compelling evidence that there is a likelihood of confusion between Viacom's and IJR's marks. Factors weighing in favor of a likelihood of confusion include: (1) the strength of the mark based on Viacom's continued use of the mark in its television series, movies, web and mobile applications, and licensed products that reference or directly mention "The Krusty Krab" during the seventeen years of the show's existence, including the periods prior to and after IJR's attempt to register the mark (Dkt. 20, App. A, Ex. 1

(Spinelli Dec.)); and (2) the identical spelling and pronunciation of the two marks, including the unconventional way of spelling the words with a "K" instead of a "C."[4] (Dkts. 19, 26).

The court also finds it persuasive that both parties use the mark to describe a restaurant (albeit in Viacom's case it is a fictional restaurant under the sea where the namesake character works for restaurant owner, Mr. Krabs). Dkt. 19 at 12; Dkt. 20, Ex. 5 (Ramos Dep. at 141:23–142:11, 145:11–15). Context here is critical, because a consumer seeing either Viacom's or IJR's marks will likely think of a restaurant. *House of Vacuums*, 381 F.3d at 485. Consumers may mistakenly believe that IJR's restaurant is an officially licensed or endorsed restaurant, similar to how Viacom's parent company, "Viacom Inc., through its subsidiary Paramount Pictures Corporation, has licensed its marks for restaurants, including Bubba Gump Shrimp Co., a seafood restaurant chain inspired by the 1994 film "Forrest Gump." Dkt. 19 at 7; Dkt. 20, App. A.

As to the fourth and fifth factors, Ramos stated in his deposition that his restaurant is targeted to the general public (including families), and that he plans to employ advertising via website, social media, and television commercials. Dkt. 19 at 13; Dkt. 20, Ex. 5 (Ramos Dep. at 135:13–137:3, 142:8, 145:11). IJR argues that there is no overlap between Viacom's and IJR's retail outlets, advertising, or locations. Dkt. 26 at 18. Viacom counters that "'SpongeBob SquarePants' products are sold online as well as in traditional retail establishments, and are thus available for purchase anywhere in the U.S." Dkt. 27 at 5. Like IJR, Viacom argues it employs similar methods of advertisement and its show reaches the general public with "one-third of viewers of the 'SpongeBob SquarePants' television series [] age[d] 18 or older." Dkt. 20, Ex. 1, 2 (Spinelli Dec. at 3). The

---

[4] In response to IJR counsel's remarks at the hearing that IJR's spelling of "The Krusty Krab" is because Ks are prettier than Cs, the court believes that Cs can be as aesthetically pleasing as Ks. Dkt. 31.

court agrees with Viacom that its sales and forms of advertising are likely to overlap with IJR's target geographic areas and customer base.

Regarding defendant's intent, while it is not clear whether Ramos purposefully copied Viacom's mark to lean on its goodwill and reputation as Viacom argues, there is evidence that Ramos was aware of Viacom's mark prior to submitting a trademark application. Dkts. 19, 20. Ramos testified that he performed a web search for "The Krusty Krab" and viewed images of "The Krusty Krab" from the "SpongeBob SquarePants" show prior to submitting an application. Dkt. 20, Ex. 5 at 12 (Ramos Dep. at 64:12). He said he had no reaction to the images because he was looking for a real restaurant bearing the same name, not a fictional one. *Id.* He also said that his friend, Ivan Murillo, was the person who suggested that he name the restaurant, "The Krusty Krab." Dkt. 20, Ex. 5 at 9 (Ramos Dep. at 47:20). During Murillo's deposition, Murillo said that some people who see Ramos's restaurant might think of the "The Krusty Krab" restaurant from "SpongeBob SquarePants." Dkt. 20, Ex. 8 at 13 (Murillo Dep. at 39).

The Fifth Circuit has held that "good faith is not a defense to trademark infringement, [because] if potential purchasers are confused, no amount of good faith can make them less so." *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596 (5th Cir. 1985). "Bad faith, however, may, without more, prove infringement. *Id.* Because "improper motive is rarely, if ever, admitted (and this case provides no exception), the court can only infer bad intent from the facts and circumstances in evidence." *Id.* At some point before IJR filed its trademark application, Ramos and his friend were aware of Viacom's use of the mark in the "SpongeBob SquarePants" show, and an intentional use of the mark weighs in favor of finding a likelihood of confusion.

The court also finds that the results of Dr. Blair's expert report weigh in favor of finding a likelihood of confusion. Viacom hired Dr. Blair to conduct a national consumer survey to measure source confusion and brand association. Dkt. 21, Ex. 2. The survey results indicate that thirty percent of respondents who have and expect to patronize restaurants identify Viacom and its brand as the entity that operates, affiliates, connects, approves, or sponsors a restaurant named "The Krusty Krab."[5] Dkt. 21, Ex. 2 at 18. Lastly, in assessing the likelihood of confusion to the public, the court considers "the typical buyer exercising ordinary caution." *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 534 (5th Cir. 2012) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir.1979)). The survey respondents consisted of people who patronize restaurants and are thus are examples of "typical buyers exercising ordinary caution." *Id.* The court finds that the survey results are sufficient to weigh in favor of finding a likelihood of confusion.

Because Viacom possesses "The Krusty Krab" as a valid mark and the court finds that all of the factors support a likelihood of confusion (e.g. strength of the mark, identical spelling of the two marks, similarity of a restaurant setting, identity of retail outlets, purchasers, and methods of advertising, the defendant's intent, and the consumer survey results indicating a likelihood of confusion among potential purchasers), there is no issue of material fact on Viacom's trademark infringement claim. Accordingly, Viacom's motion for summary judgment is GRANTED as to its trademark infringement claim (Count 4).

---

[5] In its motion to exclude the expert report and expert testimony (Dkt. 17) which the court denied during the December 20, 2016 hearing (Dkt. 31), IJR alleged defects in the methodology and coding of responses. In particular, IJR objected to Dr. Blair's inclusion of survey responses that referred to Viacom's brands and not to Viacom verbatim. Dkt. 17 at 6–7. The expert report indicated that the responses were coded for "Viacom" if respondents mentioned Viacom or its brands, including "Nickelodeon," "SpongeBob SquarePants," or a character or place from the show. Dkt. 17, Ex. 2 at 10. The court finds that Dr. Blair's methodology was appropriate.

**B.**     **Dilution** (Counts 3 and 5)

Viacom alleges that it is entitled to recover under federal and state trademark dilution claims.

Dkt. 19.   Under the Trademark Dilution Act of 2006, "the owner of a famous mark . . . shall be

entitled to an injunction against another person who, at any time after the owner's mark has become

famous, commences use of a mark or trade name in commerce that is likely to cause dilution by

blurring . . . ." 15 U.S.C. § 1125(c)(1).   Dilution occurs when an activity diminishes a mark's ability

"to clearly and unmistakably distinguish the source of a product." *House of Vacuums*, 381 F.3d at

489 (citing 15 U.S.C. § 1127; *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson

Improvement Corp.*, 53 S.W.3d 799, 812 (Tex. App.—Austin 2001, pet. denied.).   The elements of

this claim are: (1) plaintiff's ownership of a famous and distinctive mark; (2) use by the defendant

of the mark in a manner that dilutes those marks; (3) association between the two marks due to

similarity; and (4) the association between the two marks is likely to impair the distinctiveness of

the mark or harm the reputation of the plaintiff's mark.   *Nat'l Bus. Forms & Printing, Inc. v. Ford

Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012).

In contrast to federal law, state dilution law requires a plaintiff show a distinctive mark and

use of the mark is likely to cause dilution.   *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270,

278–79 (5th Cir. 2002), *aff'g* 129 F. Supp. 2d 1033 (S.D. Tex. 2001) (Crone, Mag. J.).   State law

only requires that dilution be "likely," not actual.   Tex. Bus. & Com. Code Ann. § 16.103 (Vernon

2012); *see, e.g.*, *Bell v. Starbucks U.S. Brands Corp.*, 389 F. Supp. 2d 766, 779 (S.D. Tex. 2005),

*aff'd*, 205 F. App'x 289 (5th Cir. 2006).   This dilution can occur by blurring, which refers to a

lessening of the mark's ability to distinguish between brands, or by tarnishing, which refers to a

diminishing of the good reputation of the mark.   *See, e.g.*, *Gallo Winery*, 129 F. Supp. 2d at 1038.

Because there are not many cases interpreting state dilution claims, courts in the Fifth Circuit have

looked to the general law of dilution in construing the state claims. *Gallo Winery*, 286 F.3d at 279 (citing *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 (5th Cir.1997)).

    *1. Use of the mark in commerce*

    As a threshold matter, IJR argues that it has not yet used the mark in commerce and, therefore, Viacom's dilution claims are not ripe. Dkt. 26 at 3, 8 (citing *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1127, 1133 (9th Cir. 2015) (affirming the district court's dismissal of unripe trademark and unfair competition claims because plaintiff cannot show "actual or imminent infringement"); *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 410 (2d Cir. 2005) (holding defendant's pop-up Internet advertisements that opened contemporaneously in a separate window when computer users accessed plaintiff's website did not constitute "use" of plaintiff's mark because the advertisements pop-up "in a myriad of contexts, the vast majority of which are unlikely to have anything to do with [accessing plaintiff's website]").

    While the Ninth Circuit has held that "imminent infringement" of the use of a mark renders a <u>trademark infringement</u> case ripe for granting injunctive relief, the court is not aware of any cases that address impending use in <u>dilution</u> claims. *Name.Space*, 795 F.3d at 1127. In *Name.Space*, the defendant issued and approved certain domain names that allowed people to access web sites. *Id.* at 1127. The plaintiff sued the defendant under trademark and unfair competition law because the defendant accepted applications and fees from others seeking to register the same domains that the plaintiff was using. *Id.* at 1128, 1133. However, because the defendant had not approved any of the domains that the plaintiff had in question, the Ninth Circuit affirmed the district court's dismissal of the claims because they were unripe, analogizing to patent law where "actual or imminent infringement" is a requirement. *Id.* at 1133 (citing *Swedlow, Inc. v. Rohm & Haas Co.*, 455 F.2d

884 (9th Cir. 1972) (per curiam)); *see, e.g.*, *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. CV 1208968 DDP JCX, 2013 WL 489899, at *5 (C.D. Cal. Feb. 7, 2013) (finding trademark infringement claim unripe because "no one ha[d] used the mark or ha[d] the immediate capability and intent to use the mark," because there's no knowledge whether defendant will grant use of an Internet registry despite defendant's acceptance of applications and non-refundable fees).

While the Fifth Circuit has not yet addressed the issue, a few district courts have reviewed the ripeness of trademark claims in the infringement context, but not in the dilution context. In one case, the court held that defendants' counterclaims were unripe because they alleged the uncertainty of who owned the mark left them living in fear of future lawsuits from the plaintiffs should defendants expand the use of the mark. *H.G. Shopping Ctrs., L.P. v. Birney*, No. CIV. H-99-0622, 2000 WL 33538615, at *1 (S.D. Tex. Dec. 29, 2000) (Johnson, Mag. J.) ("Until such time as Defendants actually pursue the expanded use of their trademark or in any other fashion face an actual conflict between their mark and that of Plaintiffs, any opinion rendered by the court on these matters would be advisory."). In another case, the court held that trademark infringement claims were ripe and survived dismissal because at the pleadings stage, plaintiff alleged "enough facts to show that it owns a mark that could be threatened by unfair competition under the Lanham Act and trademark infringement under Texas common law." *Prof'l Supplements, LLC v. All Am. Pharm. & Nat. Foods, Corp.*, No. 3:12-CV-00308-P, 2012 WL 12893391, at *8–9 (N.D. Tex. Oct. 26, 2012) ("Ripeness turns on whether: (1) the USPTO's rejection of the . . . mark renders the case unfit, and (2) the parties would suffer hardship if the claims for unfair competition under the Lanham Act and common law trademark infringement are dismissed."). None of these cases, however, involved dilution claims.

Both federal and state dilution law require that another party use a famous mark in commerce and Viacom has not shown that IJR has used the mark in commerce.   15 U.S.C. § 1125(c)(1); Tex. Bus. & Com. Code Ann. § 16.103 (Vernon 2012).   While Viacom presents evidence of IJR's intent to use the mark, the court finds that at this point in the litigation, IJR has not used the mark in commerce.   To support its argument, Viacom points to IJR's business plan (Dkt. 26 at 7–8; Dkt. 20, Ex. 5 (IJR's business plan)), IJR's pending trademark application (Dkt. 21, Ex. 1 at 11–12 (U.S. Trademark Application Serial No. 86470477 (filed Dec. 3, 2014)), and Ramos's statements that he is in the process of getting the restaurant in operation and securing permits (Dkt. 19, App. B, Ex. 9; Dkt. 27, Ex. 1 (Ramos Dep. at 36, 66:15–24, 141:17–22)).   Viacom also contends that IJR and Ramos have registered four domain names with variations of the words "krusty" or "krab," which are not yet operable.   Dkt. 21, Ex. 3 at 2; Dkt. 20, Ex. 8 at 2–3; Dkt. 27 at 2 (citing *Toys R Us Inc. v. Abir*, 45 U.S.P.Q.2d 1944, 1946, 1949 (S.D.N.Y. Dec. 19, 1997) (enjoining the use of "TOYSAREUS.COM" before the site became operable).   Finally, Viacom argues that pending the outcome of this litigation, Ramos said he is ready to open the restaurant.   Dkt. 27, Ex. 1 (Ramos Dep. at 36, 66:15–24, 141:17–22).   While the court finds that Ramos's discussion with landlords and his research of liquor permits are preparatory, IJR has not used the mark in commerce.   *Id.* Further, when Ramos was asked why he had not created marketing materials or advertisements for the restaurant,  he said that "the lawsuit [k]ind of put stuff on hold temporarily." *Id.* (Ramos Dep. at 90:17).   At this point in the litigation, IJR has not used the mark, which renders Viacom's dilution claims unripe.

The court finds that IJR has not used the mark in commerce, and the alleged threats of future dilution are speculative.   Because Viacom has not met at least one element of the dilution claims,

16

the court need not consider the other elements of the claim.   Accordingly, the court DENIES

Viacom's motion for summary judgment as to its state and federal dilution claims.

## C.      **Unfair Competition** (Count 2)

Viacom asserts unfair competition claims under the Lanham Act and Texas common law.

Dkts. 1,  19 (Counts 2 and 8).  In a footnote, Viacom alludes to an "identical standard" for all of its

Lanham Act claims including false designation of origin and unfair competition.  Dkt. 19 at 11 n.4.

That is, a court's finding of likelihood of confusion for one Lanham Act claim would necessitate a

similar finding for the other Lanham Act claims.  *Id.*

The Lanham Act's trademark infringement standard is the same standard that courts use to

analyze unfair competition claims under the Act.  *See* S & H Indus., Inc. v. Selander, 932 F. Supp.

2d 754, 762 (N.D. Tex. 2013) ("Unfair competition claims under the Lanham Act are governed by

the same standard as those for trademark infringement, e.g., the likelihood of confusion."); *Pebble*

*Beach Co. v. Tour 18 I,* Ltd., 942 F. Supp. 1513, 1554 (S.D. Tex 1996), *aff'd as modified*, 155 F.3d

526 (5th Cir. 1998) (applying the Lanham Act trademark infringement standard to a Lanham Act

unfair competition claim);  *Waples-Platter Companies v. General Foods Corp.*, 439 F. Supp. 551,

583 (N.D. Tex. 1977) (holding that "having found trademark infringement, it is unnecessary for this

Court to consider the broader tort [of unfair competition], either under common law or under the

Act.").

Because of the identical standard, Viacom seeks declaratory judgment on its unfair

competition claims and a clarification of the court's January 11, 2017 order which granted summary

judgment in favor of Viacom on its common law trademark infringement claim.  Dkt. 19 at 11 n.4;

Dkt. 39.  Viacom argues that finding liability on a trademark infringement claim necessarily finds

liability on the other Lanham Act claims.  *Id.*  IJR, however, argued that Viacom conflates the standards for its Lanham Act claims, but does not specify another standard for the court to review. Dkt. 40.  In its March 15, 2017 hearing, the court agreed with Viacom—that the same facts that support an action for trademark infringement under Texas common law also support an action for unfair competition under the Lanham Act. Dkt. 45.  Incorporating the same Lanham Act likelihood of confusion analysis described above and the court's earlier finding of trademark infringement, the court finds liability for unfair competition under the Lanham Act (Count 2).  Accordingly, Viacom's motion for summary judgment on its federal unfair competition claim is GRANTED.

**D.     Other Claims** (Counts 1,7, 9)

Viacom brings additional state and federal claims for false designation and federal refusal of registration. Dkts. 1, 19.  While the analysis for trademark infringement under the Lanham Act is the same for unfair competition claims, the standards is different for finding false designation of origin.  *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (applying 5-element test for false designation of origin).  Further, Viacom did not brief these claims in its motion.[6]  Dkt. 19.  Because these claims were not briefed in the motion, the court need not address them at this time.  (Viacom moves for summary judgment on all claims except for its unjust enrichment claim).  Dkt. 19 at 2 n.2.

---

[6] The court imagines an appropriate reaction from SpongeBob SquarePants would be, "Aw, tartar sauce!" *SpongeBob SquarePants, Hall Monitor* (Nickelodeon television broadcast Aug. 28, 1999).

## IV. CONCLUSION

The court finds that defendant IJR violated the common law trademark of "The Krusty Krab" (U.S. Trademark Application Serial No. 86470477 (filed Dec. 3, 2014)) (Count 4) and unfair competition under the Lanham Act (Count 2).   Accordingly, Viacom's motion for summary judgment on its common law trademark infringement claim and federal unfair competition claim is GRANTED and summary judgment on its dilution claims is DENIED.

Signed at Houston, Texas on March 17, 2017.

_____
Gray H. Miller
United States District Judge